# Exhibit 17

**From:** Katharine R. Strong
**Sent:** Monday, September 25, 2017 2:12 PM EDT
**To:** Mark I. Anderson <Mark.I.Anderson.18@dartmouth.edu>; Adella-Marie G. Cloutier <Adella-Marie.G.Cloutier@dartmouth.edu>
**CC:** Anne B. Hudak <Anne.B.Hudak@dartmouth.edu>; Adam J. Knowlton-Young <Adam.J.Knowlton-Young@dartmouth.edu>; Laurie Welch <laurie.welch@dartmouth.edu>
**Subject:** RE: Case Packet
**Attachment(s):** "Anderson, M. '18 - Case Note.pdf"

Good Afternoon, Mark –
I've attached a copy of the "Case Note" from your hearing. This will provide you with the rationale for the committee's decision in finding you responsible and in determining your sanction.
If you have any further questions, please us know.
Sincerely,
~K

**Katharine R. Strong** | **Dartmouth College**
Director | Judicial Affairs
5 Rope Ferry Road – Room 206 | Hanover, NH 03755

Katharine.R.Strong@dartmouth.edu
P - 603.646.3482
F – 603.646.0421

---

**From:** Mark I. Anderson
**Sent:** Monday, September 25, 2017 11:39 AM
**To:** Adella-Marie G. Cloutier <Adella-Marie.G.Cloutier@dartmouth.edu>
**Cc:** Anne B. Hudak <Anne.B.Hudak@dartmouth.edu>; Katharine R. Strong <Katharine.R.Strong@dartmouth.edu>; Adam J. Knowlton-Young <Adam.J.Knowlton-Young@dartmouth.edu>; Laurie Welch <laurie.welch@dartmouth.edu>
**Subject:** Re: Case Packet

Hi Adella-Marie,

Thank you, but I was hoping to get any documents with information regarding the nature of the committee's decision. Could you send me these?

Thank you,
Mark Anderson

---

**From:** Adella-Marie G. Cloutier
**Sent:** Monday, September 25, 2017 6:56:12 AM
**To:** Mark I. Anderson
**Cc:** Anne B. Hudak; Katharine R. Strong; Adam J. Knowlton-Young; Laurie Welch
**Subject:** Case Packet

Good Morning Mark,
    Thank you for reaching out to our office, I have attached the case packet you had requested above. Please feel free to contact us if there is anything else we can provide.

Kind regards,
    Adella-Marie

**Adella-Marie G. Cloutier**
Administrative Assistant
DARTMOUTH COLLEGE | Judicial Affairs
5 Rope Ferry Road - Room 204  I  Hanover, NH  03755
Adella-Marie.G.Cloutier@dartmouth.edu I 603-646-3482

COS 17F#3 - September 21, 2017 Casenote

Student: Mark I. Anderson '18
Finding: Responsible for violating Standard II; no finding regarding violation of Standard VI
Sanction: Separation, effective immediately

The student was charged with violating Standard of Conduct VI when he reportedly "violated local, state or federal law by not observing the conditions of a restraining order on or about May 4, 2017." He was also charged with violating "Standard of Conduct II through repeated behavior or conduct targeted at an individual." The student denied both allegations, and his case was heard by the Committee on Standards.

This student's former girlfriend, a student at [REDACTED] obtained a restraining order in late March, 2017 following her report to [REDACTED] Police about the Dartmouth student's behavior following the breakup of their relationship earlier in the year. At about the same time, Dartmouth Security received a call from the woman's mother detailing the family's concerns about the Dartmouth student's behavior and asking for assistance. Shortly thereafter, Dartmouth Security and Hanover Police met with the charged student to deliver a restraining order issued by [REDACTED] police. In early May, Dartmouth Security and Hanover Police were informed that this student had violated the terms of the restraining order by sending the woman an email. The student was arrested by Hanover Police.

The [RED] student reported that the Dartmouth student had "said that the only thing he wanted to do more than end his own life was to end my life or that of my mother's." She provided a series of emails from the charged student, replete with obscenities and slurs, sent after she had told him to stop contacting her. The Dartmouth student wrote he would do "whatever I can to hurt you as least a fraction as much as you hurt me." He wrote things like, "I hope life brings you nothing but pain and suffering," and "This is only going to be worse if you try and have your mom deal with it. Kill yourself you spineless fuck." He insisted on repayment for expenditures during their relationship and stated that "if you take your time I'll make sure you regret it."

He called her a "fucking pathetic disgraceful piece of shit." He threatened to post on social media things that would be "just too fucked up and hurtful for you to believe..." He insisted the woman comply with his demands "because the alternative is worse for everyone." He called her a "heartless cunt" and threatened to "post your nudes on reddit every day until they finally reach the front page." The charged student also sent distressing messages to the woman's family members (mother, brother, cousin, aunt). He wrote to his former girlfriend's mother, stating that if she contacted his mother he would "do something equally immature to make you regret it." He also wrote to her mother that "It's clear to me why some many people in your family kill themselves now. "

The charged student did not provide a written statement or any other materials in advance of the hearing. At the hearing, he said that his former girlfriend had created a "misleading narrative" that was presented "in retaliation" following a bad break-up, and that his messages

should be construed as a justified response to her harassment of him and his family. He said that the messages from him in the packet were out of chronological order and without context. He acknowledged that some actions on his part could be interpreted as malicious, but he stated his view that they were "protected by free speech." The charged student brought to the hearing a copy of the text he sent, in violation of the restraining order, telling the woman to have no contact with him. He also provided a letter he had received from his lawyer about the status of his case in N.H.

The charged student insisted that it was not true that he threatened to kill his former girlfriend or her mother, as the [REDACTED] student reported in her complaint, although he acknowledged he might have written something to the effect that he wished she were dead. He said the committee should view his communications to the woman as justified responses to the hurtful dynamics of their relationship. He also acknowledged, in his closing statement, that some of his behavior was "super fucked up" and that he deeply regretted some of the messages he sent. He denied, however, that any of the threats were real, and he argued that some of the apparently threatening statements were being misconstrued.

During deliberations, committee members observed that although the student eventually expressed some regret, they did not find his explanations or justifications for his behavior to be reasonable. They viewed the written threats as credible, and they noted that the woman had reason to feel threatened and afraid, especially after she had been clear in her request for no further contact from him. They noted that he continued to harass her and that his explicit and implied threats, which seemed real and frightening, escalated. Committee members noted that his behavior violated Standard II in "multiple ways." One committee member described the behavior as "a textbook example of coercion."

The Committee found the student responsible for violating Standard II. The reached no finding concerning the violation of Standard VI in the absence of a court finding.

In reaching its decision to separate the student, Committee members acknowledged that he appeared to be experiencing a great deal of distress, but they were especially concerned about his apparent inability to take responsibility for his actions and his lack of awareness of the significance of his actions and their impact on others. They concluded that the student's well-documented and repeated behavior was a clear and egregious violation of Standard II and incompatible with his continued status as a Dartmouth student.

Daniel M. Nelson, Director
Dartmouth Outdoor Programs