# Exhibit 36

**From:** Adam J. Knowlton-Young
**Sent:** Wednesday, January 17, 2018 12:21 PM EST
**To:** Mark I. Anderson <Mark.I.Anderson.18@dartmouth.edu>
**CC:** Anne B. Hudak (Anne.B.Hudak@dartmouth.edu) <Anne.B.Hudak@dartmouth.edu>; Adella-Marie G. Cloutier <Adella-Marie.G.Cloutier@dartmouth.edu>; Katharine R. Strong <Katharine.R.Strong@dartmouth.edu>; Laurie Welch <laurie.welch@dartmouth.edu>
**Subject:** RE: Judicial Affairs - Deadline to Request Review
**Attachment(s):** "Anderson, M. - COS 18W #2 casenote.pdf"

Dear Mark,

Please find attached the case note you requested from your January 8, 2018 meeting. As stated below in this email chain, the deadline to submit your Request for Review is the end of the day January 23, 2018.

Thank you for your attention to this message.

Be Well,
Adam

---

**From:** Adam J. Knowlton-Young
**Sent:** Tuesday, January 16, 2018 2:42 PM
**To:** Mark I. Anderson <Mark.I.Anderson.18@dartmouth.edu>
**Cc:** Anne B. Hudak (Anne.B.Hudak@dartmouth.edu) <Anne.B.Hudak@dartmouth.edu>; Adella-Marie G. Cloutier <Adella-Marie.G.Cloutier@dartmouth.edu>; Katharine R. Strong <Katharine.R.Strong@dartmouth.edu>; Laurie Welch <laurie.welch@dartmouth.edu>
**Subject:** Judicial Affairs - Deadline to Request Review
**Importance:** High

Dear Mark,

Based on our conversation yesterday, and confirmation from DHMC, I understand that you have been discharged from DHMC. The cover letter to your outcome letter (see attachment) from the January 8, 2018 hearing stipulated that you would be granted an extension to your deadline to Request Review on the hearing process to seven days from the day you left DHMC. That cover letter also stipulated we would confirm your new deadline to Request Review via email.  **Please let this message confirm that your deadline to Request Review is now the end of the day January 23, 2018.**

I will email the case note from your January 8, 2018 hearing to you when it is available, as we communicated about yesterday.

Thank you for your attention to this message.

Sincerely,

Adam

_____
Adam Knowlton-Young
Judicial Affairs, https://www.dartmouth.edu/judicialaffairs/
Dartmouth College
5 Rope Ferry Road, Rm 204
Phone: 603-646-3482
Fax: 603-646-0421

COS Hearing '18W#2 Case note – Monday, January 8, 2018
Student: Mark I. Anderson '18
Finding:    Admitted violation of Standard II (harassing behavior or conduct directed at an individual)
              In the absence of a conviction, no finding entered on Standard VI violation of law charge
Sanction:   Separation

An '18 admitted engaging in harassing behavior or conduct targeted at an individual in January, February, March and/or May of 2017, in violation of Standard II. The allegation pertained to communications the '18 had with his former girlfriend, a [REDACTED] student and graduate of his high school, who obtained an emergency restraining order against him from the Somerville, Massachusetts District Court on March 29, 2017.

According to the [REDACTED] Police Report, the [RED] student came to the station and reported that she had broken up with the '18 in late February of 2017. She said that after he'd sent her hundreds of "mean" texts, including threats to kill himself, she told him to stop and blocked him from social media. She said that he had continued to send harassing and threatening communications to her and to members of her family. She told the [RED] Police that he said he wanted to "end the life of you and your mom", "threatened to post nude photos of her online in retaliation for making him suffer", and that he would "make her regret it" if she did not contact him. She told the police that she was "really scared for my safety and the safety of my family" and that she was in "constant distress and fear".

[REDACTED] Police contacted Dartmouth Safety and Security and Hanover Police that evening (3/29/17) to convey their concerns and to arrange for delivery of the emergency restraining order. At the '18's request, Security and HPD met him shortly after 8 p.m. in the Safety and Security parking lot. The HPD officer gave the order to the '18, explained the terms and had him sign the acknowledgement. According to the Safety and Security report, the '18 was upset, asked how he could fight it, and said he had been trying to "get them to stop contacting and harassing [him]". HPD advised the student to contact [RED] Police or the Lebanon District Court.

According to the [REDACTED] Police report, the [RED] student appeared at the Somerville District Court the next morning and provided additional examples of the '18's communications. The judge converted the overnight emergency order into an Abuse Prevention Order, which ordered the '18 to stay at least 100 yards from the [RED] student, stay away from her residence, and stay away from [RED]. The order also directed that the '18 was "not to communicate electronically or disseminate, send or post any images" of the '18 without her prior written permission.

Copies of emails provided in support of the requests for protective orders, included in the [RED] Police report and the disciplinary hearing case packet, included:

*A March 11, 2017 message from the '18 to the [RED] student at 12:03 a.m., in which he called her "a stupid fucking pathetic bitch", "a crooked fucking whore", and told her to "kill yourself you fucking sociopath". He also called her a "heartless cunt" and said he would "probably post your nudes on reddit every day until they finally reach the front page (cause with your gross flabby tits, it'll probably

take some work!)". He said he would do "whatever I can to hurt you as [sic] at least a fraction as much as you've hurt me" and that he hoped "life brings you nothing but pain and suffering".

*A March 11, 2017 email at 1:51 a.m., which said "This is only going to be worse if you try and have your mom deal with it. Kill yourself you spineless fuck". Another message at 2:31 a.m. called her a "fucking pathetic disgraceful piece of shit". Another at 2:34 a.m. stated: "If you take your time I'll make sure you regret it".

*A March 12, 2017 email from the '18 to the RED student at 3:24 a.m., in which the '18 referred to his father deactivating his phone "because I had promised I'd stop contacting you before and didn't", called his father a "paranoid piece of shit", and described his father "screaming at me for doing this to him". The message also warned the RED student that "You will know the same pain and suffering that you caused me now." He said "the thought of you crying excites me", that hearing she failed a test "was truly exhilarating", and that once he "let [his] feelings out publicly….the pain you'll feel might resemble mine".

The record also included concerns that the RED student's mother shared with the RED Police and Safety and Security on March 29th, and an excerpt of a March 12th message the '18 sent to the mother in which he threatened to "make her regret it" if she contacted his family again, and thanked her for "further justifying my hatred".  The mother also shared a March 27th message the '18 sent to the mother in which he said it "honestly [felt] really good to do something that'd let me know she'd feel a fraction of the unnecessary pain I experienced because of her" [referring to the RED student], issued a "final warning" that the mother not contact his family, and said "I promise I will do my best to ensure being weak like this for her own sake cause her to feel so much more pain than if she'd shown me any respect…".

Two months later, on the evening of May 4, 2017, the RED Police contacted Safety and Security to report that the '18 had violated the restraining order by sending the RED student a message. Several hours later, Safety and Security and HPD met with the '18, and HPD placed him under arrest.

The '18 was not enrolled during the 2017 summer and fall terms. He returned to campus for his Committee on Standards disciplinary hearing on January 8, 2018. In addition to the RED and Safety and Security reports, the case packet included 28 pages of the material he submitted for the hearing, including his own 5-page, detailed chronology of his previous relationship with the '18, an extensive account of the break-up and the events following, and additional emails and communications with her and members of both families. He said that a dispute over money he thought the RED student owed him "is ultimately what caused this situation to proliferate, and what motivated me to write the emails". He said that the RED student and her mom "said they were going to get revenge for what [he'd] said in the emails", that they used "a false narrative" in the complaint to RED Police, and they were trying to have his external scholarship "taken away". He explained how he felt as the situation progressed, and noted that "things from the end of the breakup still haunt me every day of my life".

In his opening statement during the COS hearing, the '18 reiterated that the actions he'd admitted were "the worst things" he'd ever said or done, and that they were "totally unrepresentative of his character". He said that "no additional punishment can make [him] regret more", and that he would

attempt to explain rather than justify his behavior to the Committee. He said that he had done what he did because he couldn't stop thinking about how the [RED] student ended their relationship, how disrespected he felt, and how what she had said haunted him. He said that he "felt like he had to do something that showed just as little respect as she had shown for him". He said he was "possessed" and "just wanted to force her" to acknowledge what she had done. He said he didn't have any nude photos of her, and that he'd threatened to post them in a "pathetic attempt" to make her acknowledge him.

When questioned about the statements and emails in the [RED] report, he did not dispute them. He admitted that his messages were "unwanted" and "threatening". He observed that "obviously, I was really doing concerning shit here". He also expressed frustration that she and her family would "use College systems" to falsely accuse him, that they had been harassing him in the spring, and that they had managed to put him through "incredible suffering". He also expressed significant frustration with the College, including a dean with whom he had contact in the days after the restraining order was served (who appeared as a witness at the hearing and gave a different account of their interaction), financial aid staff, Judicial Affairs, and other College administrators. In his closing statement, the student repeated his belief that imposing a sanction was not necessary and would not be good for him, the Dartmouth community, or the [RED] student's family.

FINDING

The Committee agreed with the student's admission that he had violated Standard II and found him responsible. In the absence of a conviction, the Committee entered no finding on the Standard VI violation of law charge.

The student had received a Reprimand for a Standard IV violation in the fall of 2016. The Committee did not factor it into its sanctioning decision.

Panel members were deeply concerned by the student's impulsive, unwanted, harassing and threatening pattern of behavior in February, March, April and May of 2017. Whether or not the student intended to follow through on specific threats to the [RED] student and her mother, the Committee believed his communications were extremely serious violations of Dartmouth Community Standards that would not be tolerated here. The panel was also deeply concerned that at this hearing, nine months later, the student's description of his pain, anger and motivations did not appear to have diminished over time and did not convey genuine remorse or growth. Despite his assertion that he accepted responsibility and described his behavior as the "worst thing" he'd ever done, the student's other statements led the Committee to believe that he felt his actions during this period were justified, and that the [RED] student, her family, and Dartmouth were to blame. Under the circumstances, the panel expressed concern for the safety and security of the Dartmouth community if the student were to continue his education here. They did not believe that a long period of suspension would be appropriate given the severity of the behavior, or that it would be effective in protecting the community.

Given these factors, the Committee imposed permanent separation from the College, effective immediately.