Exhibit 43

1                                          VOLUME: I
                                           PAGES: 1-65
2
                   UNITED STATES DISTRICT COURT
3                   DISTRICT OF NEW HAMPSHIRE

4

5   * * * * * * * * * * * * * * *

6    MARK ANDERSON
                                         Civil Action No.
7     v.                                 1:19-CV-00109-SM

8    TRUSTEES OF DARTMOUTH COLLEGE

9   * * * * * * * * * * * * * * *

10

11

12                   DANIEL M. NELSON

13        Video Conference Deposition held at the

14        offices of Hanover Inn, Two East Wheelock,

15        Hanover, New Hampshire, on Monday, January

16        20, 2010, commencing at 11:05 a.m.

17

18

19

20

21

22

23



```
 1                        APPEARANCES

 2   Representing the Plaintiff:

 3        Mark Anderson, pro se

 4   Representing the Defendant:

 5        Dinse
          209 Battery Street
 6        P.O. Box 988
          Burlington, Vermont 05402
 7        (802)859-7026
          By:  Shap Smith, Esq.
 8             ssmith@dinse.com
     - and -
 9        Dartmouth College
          Office of the General Counsel
10        65 South Main Street
          Hanover, New Hampshire 03755
11        (603)646-2444
          By:  Dana Scaduto, Associate General Counsel
12             dana.scaduto@dartmouth.edu
     - and -
13        WADLEIGH, STARR & PETERS
          95 Market Street
14        Manchester, New Hampshire 03101
          (603)669-4140
15        By:  Christoher P. McGown, Esq.
               cmcgown@wadleighlaw.com
16

17   Court Reporter:   Cheryl B. Palanchian
                       Registered Merit Reporter
18                     Certified Realtime Reporter
                       NH LCR No. 60
19

20

21

22

23
```



```
 1                    I N D E X

 2   Witness:

 3   Daniel M. Nelson

 4
        EXAMINATION                          PAGE
 5

 6   By Mr. Smith . . . . . . . . . . . . . . . .5

 7   By Mr. Anderson  . . . . . . . . . . . . . .22

 8
        EXHIBITS                             PAGE
 9

10      23    Case note . . . . . . . . . . . .18

11

12      Errata sheet:    . . . . . . . . . . .65

13

14

15

16

17

18

19

20

21

22

23
```



1  college are discussed, and decisions are made whether or

2  not to refer cases to the Committee on Standards.  And

3  chairs also review case packets that are prepared, and

4  before those can go out to committee members and to

5  charged students.

6       Q.   Let's talk about it from a different

7  perspective.

8            So if you were going to actually tell somebody

9  about the process of a Committee on Standards hearing

10 sort of from the beginning to the end, tell me what you

11 would tell them?

12      A.   The hearing itself, scheduled for 2:00 in the

13 afternoon.  Committee members come in fifteen minutes or

14 thirty minutes before the hearing is scheduled to begin

15 with the charged student.  The chair makes sure that the

16 committee members all know each other, so introduces

17 people that haven't previously served together on

18 committees.  Makes sure that committee members

19 understand the standard of evidence that the college

20 uses.  Makes sure that committee members understand the

21 charges as they relate to the college's standard of

22 conduct.  Makes sure that nobody has any prior

23 relationship with the charged student or with witnesses



1 | that would either constitute or be perceived to

2 | constitute a conflict of interest.  And makes sure that

3 | committee members understand the process of the hearing.

4 |         That process is we'll be bringing in the

5 | student and any witnesses.  We'll discuss whether -- the

6 | order in which witnesses will come in.  Talk about how

7 | once that student comes in, committee members can

8 | indicate if they have questions to ask.  And also that

9 | the charged student has an opportunity to make an

10 | opening statement, and can propose that committee

11 | members ask questions if the charged student thinks

12 | there are questions that need to be asked that the

13 | committee members haven't asked.  It's ultimately the

14 | chair that will decide whether or not those questions

15 | are appropriate and relevant.  And kind of preside over

16 | that process for however long the hearing stakes.

17 |         Once there are no more questions, the student

18 | has an opportunity to make a closing statement.

19 | Students aren't obliged to make opening or closing

20 | statements but they do have that opportunity.  The

21 | responsibility of the chair is to make sure that when

22 | the hearing is over, the charged student has had an

23 | opportunity to address the charges that are under



 1   consideration and to say anything and everything that's

 2   relevant to that.

 3              And then the student is excused.  The

 4   committee goes into executive session and deliberates.

 5   And there are two phases to the deliberation.  Phase

 6   1 is to discuss whether or not there is a preponderance

 7   of evidence that the student has --

 8              (Interruption in the proceedings.)

 9                 MR. SMITH:  This is off the record.

10              (Discussion off the record.)

11              (Mr. Anderson is now attending via video

12   conference.)

13                 THE WITNESS:  Should I continue where I

14   was?

15   BY MR. SMITH:

16      Q.   Sure.

17      A.   So talking about deliberations, there are two

18   phases to the deliberations.  Phase 1 is for the

19   committee to determine whether or not there's a

20   preponderance of evidence that the student is

21   responsible for the violation, the alleged violation in

22   question.  The chair stresses that the committee -- that

23   the student, charged student is presumed to be not



1  responsible for a violation unless and until the

2  committee finds that there is a preponderance of

3  evidence that the violation took place.

4          If the committee decides that the student is

5  not responsible and that decision is by a majority vote

6  that does not include the chair -- the chair doesn't

7  vote in that -- then the hearing is over.  If the

8  committee decides that there is a violation, then the

9  next phase of deliberations is for the committee to

10  determine what the sanction would be.  And the chair

11  also does not have a vote in what the sanction is.

12     Q.    During a Committee on Standards hearing, is

13  there typically an employee of the Judicial Affairs

14  Office present?

15     A.    Yes.  The director of Judicial Affairs or that

16  person's deputy is present during the hearing and during

17  deliberations.

18     Q.    And what is the role of the Judicial Affairs

19  Office employee during the Committee on Standards

20  hearing?

21     A.    Really to provide administrative support:  To

22  operate the tape recorder, any video conferencing

23  technology, to make sure that the materials are present.



1  of it.

2      Q.   Do you have a recollection of when the hearing

3  involving Mr. Anderson started?

4      A.   What time of day or --

5      Q.   Yeah, what time of day?

6      A.   Not specifically.  They typically start in the

7  afternoon, but...

8      Q.   Do you have a specific recollection of when

9  the hearing happened?

10      A.   In the fall of that year.

11      Q.   And do you have a recollection of who was on

12  that panel?

13      A.   No, I don't.

14      Q.   Tell me, to the extent that you remember,

15  about the hearing involving Mr. Anderson?

16      A.   Hearings are -- all hearings are pretty much

17  the same.  There's the executive session for the

18  committee before the hearing begins, that I described.

19  The student is then -- when the hearing begins, the

20  student is invited in.  I typically introduce myself to

21  the student before the hearing begins, and to the

22  student's adviser, if the student has elected to have an

23  adviser.  The student is invited to make an opening



1   statement.  And the committee asks questions of the

2   student and of witnesses.

3          The student is given an opportunity to suggest

4   questions that might be asked.  Also the student is

5   given an opportunity to ask questions him or herself if

6   the chair thinks the question is relevant.  And at the

7   end of that process, the student is given an opportunity

8   to make a closing statement.  And then the committee

9   goes into deliberation.

10      Q.   Do you have any specific recollection of

11  Mr. Anderson asking any questions at the Committee on

12  Standards hearing involving him?

13      A.   I don't have a specific recollection of that

14  but, generally speaking, it's rare that when students

15  have that opportunity that they don't.  So I -- but I

16  don't have a specific recollection of any specific

17  questions that he asked.

18      Q.   Do you have a specific recollection of who his

19  adviser was for that particular hearing?

20      A.   No, I don't.

21      Q.   Do you have any specific recollection about

22  the hearing at all?

23      A.   Very, very little.  I've done lots of these



1  don't remember the specifics of the discussion, but as

2  chair I make sure that ranges of sanctions are

3  considered.  And there's usually a fair amount of

4  discussion.  And then finally a committee member makes a

5  motion and there's a vote.  If a majority doesn't

6  support the motion, there's more discussion until

7  there's another motion and a vote.

8       Q.   Do you have any specific recollection of how

9  that process unfolded with regard to Mr.  Anderson?

10      A.   No, I don't.  Not the specifics of it.  Just

11 that the committee determined that he was responsible

12 and that the appropriate sanction was separation from

13 the college.

14      Q.   After a hearing and a decision by the members

15 of the Committee on Standards, do you draft a memo about

16 the hearing?

17      A.   Yes, I draft a case note.

18      Q.   And did you do so in this situation?

19      A.   Yes.

20              MR. SMITH:  Mark, are you still on?

21              MR. ANDERSON:  Yes, yes.

22              MR. SMITH:  I'm going to mark the case

23 note, which is the case note from September 21, 2017,



1      A.   Yes.  This is the case note I wrote.

2      Q.   And can you tell me what your standard

3  practice is with regard to drafting a case note?

4      A.   So every chair is responsible for drafting a

5  case note.  And my practice is to write a case note

6  immediately after the hearing.

7      Q.   And did you do that in this instance?

8      A.   Yes, I did.

9      Q.   And does the case note document the hearing

10  and the reasons for a finding that there was a

11  violation?

12      A.   Yes.

13      Q.   Does it also document what the sanction is and

14  the reasoning behind the sanction?

15      A.   Yes.

16      Q.   So that accurately reflects your understanding

17  of the proceeding that took place in September of 2017

18  with regard to Mr. Anderson?

19      A.   Yes.  And so it's a summary of the nature of

20  the case, the committee's decision, and the reasons for

21  the committee's decision.

22      Q.   Is that case note provided to the student

23  after the hearing?



1              MR. SMITH:  Objection.

2         A.   I don't have an opinion about that.

3         Q.   You don't have an opinion -- sorry.

4              Isn't it the responsibility of the COS chair

5    at the hearing to ensure that it is performed in

6    accordance with Dartmouth policies?

7         A.   I presided over that hearing to the best of my

8    ability and believed it was conducted according with the

9    college's policies.

10        Q.   Okay.  And you're not aware of any way that

11   the hearing failed to adhere to the college's policies?

12             MR. SMITH:  Objection.  You can answer.

13        A.   I don't have anything else to say about that.

14             MR. ANDERSON:  Shap, could you produce

15   the student handbook, the one that was in effect at the

16   time of my hearing?

17        Q.   Daniel, are there any texts which dictate the

18   college's policies and how disciplinary hearings must be

19   carried out, other than the Dartmouth College Student

20   Handbook?

21        A.   The standards of conduct and the rules for

22   judicial procedures are described in what used to be

23   called the "Green Pages" of the student handbook.



1        Q.   Okay.  And are there any other -- is there

2   anything else that -- any other publicly available

3   documents which describe Dartmouth's policies?

4        A.   I believe the student handbook constitutes the

5   relevant policies.

6        Q.   All right.  So tell me when you have that.

7             MR. SMITH:  He has -- the challenge is

8   these changed.  He has both 9 and 10 in front of him.

9   And depending on when you are talking about, I think

10  9 is likely relevant for your initial hearing, and I

11  believe 10 was relevant for your subsequent hearing.  So

12  he has both of those in front of him.

13            MR. ANDERSON:  Okay.  Sorry.  Just to

14  clarify, you said that there were different handbooks in

15  effect at my first and second hearing?

16            MR. SMITH:  I believe.  And my

17  understanding is that there was a revision of the

18  student handbook during the course of the time that you

19  were going through the judicial process.  I do not -- I

20  do not believe that any of the particular provisions

21  that will be relevant to your process were revised, but

22  to be completely accurate, we've produced both of those

23  student handbooks.

