# Exhibit 44

```
              IN THE UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF NEW HAMPSHIRE




*  *  *  *  *  *  *  *  *  *  *
                              *
JOHN DOE,                     *
                              *
           Plaintiff,         *
                              *  Civil Action No.
     V.                       *  1:19-cv-00109-SM
                              *
TRUSTEES OF DARTMOUTH COLLEGE,*
                              *
                              *
           Defendant.         *
                              *
*  *  *  *  *  *  *  *  *  *  *




          DEPOSITION OF ADAM KNOWLTON-YOUNG

Deposition taken at the Hanover Inn, 2 East Wheelock

Street, Hanover, New Hampshire, on Friday, March 6,

2020, commencing at 11:05 a.m.



Court Reporter: Michele M. Allison, LCR, RPR, CRR
                NH LCR No. 93 (RSA 310-A:161-181)
```



```
 1  APPEARANCES:

 2
    For the Plaintiff:   (Via videoconference)
 3                       Mark Anderson - pro se
                         9007 W. Shorewood Drive, #542
 4                       Mercer Island, WA  98040
                         jd2018265@gmail.com
 5

 6  For the Defendant:   DINSE
                         By:  Shapley Smith, Esq.
 7                       209 Battery Street
                         Burlington, VT  05402
 8                       802-859-7026
                         ssmith@dinse.com
 9
                               -and-
10
                         (Via videoconference)
11                       WADLEIGH, STARR & PETERS, P.L.L.C.
                         By:  Christopher P. McGown, Esq.
12                       95 Market Street
                         Manchester, NH  03101
13                       603-206-7215
                         cmcgown@wadleighlaw.com
14

15  Also Present:        Dana Scaduto, Esq.

16
                              STIPULATIONS
17
        It is agreed that the deposition shall be taken
18  in the first instance in stenotype and when
    transcribed may be used for all purposes for which
19  depositions are competent under the Federal Rules of
    Civil Procedure.
20
        Notice, filing, caption and all other formalities
21  are waived.  All objections, except as to form, are
    reserved and may be taken in court at time of trial.
22
        It is further agreed that if the deposition is
23  not signed within thirty (30) days after submission to
    counsel, the signature of the deponent is waived.
```



Case 1:19-cv-00109-SM   Document 48-44   Filed 05/18/20   Page 4 of 10

```
 1                      I N D E X
 2
 3   WITNESS:      Adam Knowlton-Young
 4
 5
 6   EXAMINATION:                                    Page
 7           By Mr. Smith                              4
 8           By Mr. Anderson                          29
 9
10
11   EXHIBITS FOR IDENTIFICATION:
12   None
13
14
15
16
17
18
19
20
21
22
23
```



800.211.DEPO (3376)
EsquireSolutions.com

1  though we certainly discuss it in the office, but it's
2  just left to whoever's organizing the schedule.  So I
3  don't make those direct decisions.  It's sort of the
4  randomness of who's available when.
5        Q.   Okay.  Does a Judicial Affairs Office
6  representative attend the committee on standards
7  hearing?
8        A.   Yes.
9        Q.   What is the role of the JAO representative
10 during that hearing?
11       A.   Primary role is just to make sure that things
12 go smoothly.  So the hearing's recorded, so we make
13 sure that that happens.  We help move the responding
14 student in and out of the -- you know, like from a
15 waiting room and then just help shuttle people around,
16 if there's any witnesses.  If there's any questions
17 about process that come up from the committee or
18 potentially from the student or from the student's
19 advisor, then we can be there to help answer those
20 process questions.
21            And then once deliberations have started by
22 the committee, then we -- after they determine
23 responsibility or not, then after that has happened,



1  then we will provide some case precedent or previous
2  disciplinary record that would be applicable.  And
3  that's pretty much it.
4       Q.   But you don't vote on the decision as to
5  whether responsibility has been found?
6       A.   That's correct, we don't.
7       Q.   And you don't vote on sanctions; is that
8  correct?
9       A.   That's correct.
10      Q.   Who runs the committee on standards hearing?
11      A.   Typically the hearing chair sort of
12 facilitates, moderates that process.  Certainly if
13 they have questions for us we can chime in, but
14 typically it's the chair.  And they also don't vote.
15      Q.   So who else at the Judicial Affairs Office
16 other than you participates in the committee on
17 standards hearings?
18      A.   In the hearings themselves?
19      Q.   Yes.  You have -- you're one of the people
20 who will staff those hearings, correct?
21      A.   That's correct.  It's typically either myself
22 or the director.
23      Q.   Okay.  And that's Katharine Strong?



1       A.   Katharine Strong, yeah.
2       Q.   Anybody else who will staff those hearings?
3       A.   Not staff it.  We do have observers.
4  Sometimes if there's new committee members they might
5  observe.  It's possible a staff member might observe a
6  hearing to get more familiar with what the process
7  actually is, but they're not staffing it or
8  responsible for anything.
9       Q.   I just want to take you back to the
10 allegation letter process.  What is the process for
11 drafting that allegation letter typically?
12      A.   So yeah, typically the way it works is we've
13 reviewed some kind of report, you know, like there --
14 so we've reviewed a report of some kind and we're
15 asking the basic question again is if the information
16 were accurate would this rise to be a violation of the
17 standards of conduct.  And if the answer to that is
18 yes, then as I said before, we'll determine if it
19 should be heard at suspension level or administrative
20 hearing level.  And so we have different
21 correspondence, different process for those two
22 things.
23           So once we've assessed it should go through a



1  suspension level process, then we pull together what
2  we call an allegation letter, just sort of stating
3  what the allegations are and giving some notice about
4  things.  Then there's a statement of understanding
5  document that is a part of -- piece of paperwork we
6  provide that gives the student sort of their rights in
7  the process and also asks for some information from
8  them to respond to the information we've given them.
9        And then there's whatever the information or
10 a report is.  That can be a variety of things.  And so
11 we pull that together.
12     Q.  Do you have a recollection when you first
13 learned about Mark Anderson and a possible need to
14 draft an allegation letter?
15     A.  I don't remember -- I don't remember exactly.
16 I remember generally a time frame of sometime in the
17 late spring of that year, but I don't remember
18 specifically.
19     Q.  And do you have a recollection of whether you
20 drafted an initial allegation letter directed to Mark
21 Anderson?
22     A.  I have subsequently seen an allegation letter
23 that has my name on it and yes, I remember that being



1  Q.  Were you involved after the reviewing officer
2  stated that Mark Anderson should have a new hearing?
3  A.  I remember hearing that decision and I
4  remember some planning, starting to plan of when a new
5  hearing would happen, but I don't recall -- I don't
6  recall specifically for this case.  My memory is about
7  what our normal procedure is, and so I don't recall
8  specifically how we started to prep once that decision
9  was given.
10  Q.  Are you -- do you know whether you drafted
11  the allegation letter that went out after the
12  reviewing officer had made her decision?
13  A.  I don't actually recall.  I wouldn't be -- I
14  don't recall.
15  Q.  Well, why don't we approach it this way:
16  What do you recall with regard to when your
17  involvement in this second hearing occurred?
18  A.  So my recollection is, is certainly I
19  remember getting the decision and doing some planning
20  around it through the fall term around trying to
21  figure out when it would happen and those kinds of
22  logistics that we're all involved in.
23      I remember picking up more formally, I



1  believe it was the end of November if I remember
2  right, but sometime in November picking up the case
3  more formally and understanding that I would be the
4  one to sit in.  Given that Katherine had already sat
5  in on the September one, it wouldn't make sense for
6  her to sit in on the second one so that there would be
7  someone fresh there.
8         So I remember picking that up and
9  understanding I would sort of be the one in the office
10 to usher this one through.
11     Q.  What was your role as of November of 2020
12 [sic] with regard to making sure that case packet was
13 developed and committee on standards process would be
14 followed?
15     A.  I think you said November 2020.  I assume you
16 mean --
17     Q.  I mean 2017.
18     A.  -- 2017?
19     Q.  Yeah.
20     A.  Yeah, so at that point similarly as described
21 earlier in broad terms, I -- and I recall talking with
22 Mark several times, I don't remember details of
23 conversations but fielding questions broadly about the

