# Exhibit 46

1                  UNITED STATES DISTRICT COURT

2                   DISTRICT OF NEW HAMPSHIRE

3

4      * * * * * * * * * * * * * *

5     MARK ANDERSON,                *

6                    Plaintiff,    *

7      vs.                          * NO. 1:19-CV-109-SM

8      TRUSTEES OF DARTMOUTH        *

9      COLLEGE,                     *

10                   Defendant.    *

11     * * * * * * * * * * * * * *

12

13        VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

14                  MICHELLE T. CLARKE

15                Hanover, New Hampshire

16            April 6, 2020     2:02 p.m.

17

18

19

20

21          Maryellen Coughlin, RPR/CRR

22

23



```
 1    APPEARANCES:

 2    Appearing Pro se (Via Zoom):

 3              Mark Anderson

 4

 5    Representing the Trustees of Dartmouth College

 6    (Via Zoom):

 7              DINSE

 8              PO Box 988

 9              209 Battery Street

10              Burlington, Vermont 05402-0988

11              BY:  Shapleigh Smith, Esq.

12              802-864-5751

13              ssmith@dinse.com

14

15    Present:  Chris McGown, Esq.

16               Dana Scaduto

17

18    Videographer:  Mike Cooper

19

20

21

22

23
```



```
1                    I N D E X

2   EXAMINATION                        PAGE

3    BY MR. ANDERSON                              5

4

5                    EXHIBITS

6    NO.          DESCRIPTION              PAGE

7         None

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```



1        Q.        So, yes, going over everything

2   we've just said, you know, someone might be --

3   you know, like in a sexual assault case, someone

4   might be separated from the college to like

5   ensure safety of the other individual, I don't

6   know, something like that, or if, I don't know,

7   someone was like being on campus being prone to

8   like self-harm or something.  I can imagine

9   reasons why the committee might separate someone

10  from the college.  But in my case, was there any

11  reason other than to punish for transgressions?

12       A.      I can't --

13               MR. SMITH:  Objection.  You can

14  answer, Michelle.  I just wanted to object.

15       A.        I can't speak for the whole

16  committee.  Again, I can only speak for myself,

17  and I don't have a complete memory of all of what

18  I hoped might come of the sanction, but the

19  primary reason I recall supporting that sanction

20  was for the safety of the community.

21       Q.      Okay.  And for what reason did you

22  think that I might pose a threat to the

23  community?



1      A.      Based on my recollection, the

2   materials that I reviewed in preparation for the

3   case led me to believe that there's a pattern of

4   threatening behavior and an unresponsiveness to

5   various levels of authority, including the

6   police, the issuance of a restraining order, that

7   that hadn't been sufficient to end the behavior,

8   and that in the committee hearing there didn't

9   seem to be much in the way of an awareness of how

10  frightening and inappropriate the behavior was.

11     Q.      Okay.  So what role does the --

12  sometimes a JAO member is present and

13  sometimes -- sorry, yeah, sometimes a JAO member

14  is present in a hearing.  There's always a chair.

15  What role can they play in affecting the eventual

16  decision of the committee?

17            MR. SMITH:  Objection.  You can

18  answer.

19     A.      Are you asking what the formal

20  provisions governing the committee process allow?

21     Q.      In your experience --

22     A.      -- is that your question or?

23     Q.      Well, what sort of responsibilities



1    they have been wildly abused by Dartmouth's

2    employees, administrators for at least six months

3    leading up to the hearing, or do you think that

4    the feelings engendered by that experience are

5    comparable to those that most students feel when

6    they are present at their hearings in this type

7    of circumstances?

8                    MR. SMITH:   Objection, but you can

9    answer.

10         A.       I can't speculate on what other

11   students are feeling and why.  I can just observe

12   that it seems to me that they're quite upset to

13   be -- to be of hearing before the COS.

14         Q.       Okay.  So you said before you felt

15   that I was potentially a threat to the Dartmouth

16   community.  For what reasons exactly?

17         A.       I think there's a full accounting

18   of that.  Right now it's been two years.  But on

19   the basis of the evidence that I reviewed which

20   suggested a pattern of threatening, intimidating,

21   frightening behavior and a lack of remorse for

22   that behavior, I felt that your continued

23   presence on the campus would endanger others.



1       Q.      And what was that perceived lack of

2    remorse based upon or derived from?

3       A.      The fact that throughout the

4    committee hearing your focus was exclusively or

5    almost exclusively on the repercussions that the

6    events and the subsequent hearing, COS hearing,

7    was having on you as opposed to the victim in the

8    case.

9       Q.      Okay.  And do you think that

10   Dartmouth's decision to -- again, 'cause

11   Dartmouth did review all of the information that

12   you guys saw a year prior, met with me and

13   decided all of that information did not

14   justify --

15              THE COURT REPORTER:  Did not?  I'm

16   sorry.  Excuse me.  Did not justify?  I lost you.

17      Q.      So do you think that it was perhaps

18   more understandable for me to have felt that way

19   given the fact that Dartmouth had reviewed all of

20   the content of the report that the COS was given,

21   your COS was given, and approximately one year

22   prior or nine months prior decided that --

23   informed me that it was not going to raise all