# Exhibit 47

# THE STATE OF NEW HAMPSHIRE

GRAFTON, SS.                                          SUPERIOR COURT

No. 04-E-288

Andrew Van Ness

vs.

Dartmouth College

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The defendant Dartmouth College ("Dartmouth") moves for summary judgment.
Dartmouth argues that it is entitled to summary judgment because the undisputed facts demonstrate
that it fully complied with its legal obligations to the plaintiff in its administration of the plaintiff's
disciplinary proceeding. The plaintiff, Andrew Van Ness ("Mr. Van Ness") objects, and has filed a
partial cross-motion for summary judgment, in which he argues that on the undisputed facts the
Committee on Standards ("COS") applied an erroneous standard for judging his conduct, and that
the hearing conducted by the COS violated his rights, as those rights are defined in the Dartmouth
College Student Handbook. For the reasons set forth below, Dartmouth's motion for summary
judgment is granted and Mr. Van Ness' partial motion for summary judgment is denied.

In acting upon a motion for summary judgment, this Court is required to construe the
pleadings, discovery, affidavits and all inferences properly drawn from them in the light most
favorable to the non-moving party to determine whether the proponent has established the absence
of a dispute over any material fact and the right to judgment as a matter of law. Estate of Joshua T.,
150 N.H. 405, 407 (2003). The party objecting to a motion for summary judgment "may not rest
upon mere allegations or denials of his pleadings, but his response, by affidavits or by reference to
depositions, answers to interrogatories, or admissions, must set forth specific facts showing that
there is a genuine issue [of material fact] for trial." RSA 491:8-a, IV (1997). An issue of fact is
material if affects the outcome of the litigation. Panciocco v. Lawyers Title Ins. Corp, 147 N.H.
610, 613 (2002). Upon cross-motions for summary judgment, the Court separately applies this
standard to each party's motion.

The Court has thoroughly examined the pleadings, the transcript of the disciplinary hearing
and the documentary record submitted by the parties, and has carefully considered the parties'

arguments. Having done so, the Court finds that there is no genuine dispute of material fact, and proceeds to consider whether either party is entitled to judgment as a matter of law.

Mr. Van Ness is a Dartmouth undergraduate currently under disciplinary suspension for six academic quarters. Dartmouth initiated disciplinary proceedings against Mr. Van Ness based on a complaint made by another Dartmouth undergraduate, Margot Hurley. Ms. Hurley accused Mr. Van Ness of sexual abuse, in violation of Standard III of the Dartmouth Code of Conduct.

The allegations against Mr. Van Ness can be described as follows. On the evening of September 27, 2004, Ms. Hurley, one of her roommates and a male friend went to Mr. Van Ness' fraternity to play beer pong ("pong"). While at the fraternity, Ms. Hurley played several games of pong, during which she consumed alcoholic beverages.[1] After the pong games concluded, Ms. Hurley proceeded to the floor of the fraternity where Mr. Van Ness' bedroom was located. Mr. Van Ness eventually came up the stairs and saw Ms. Hurley, who was waiting for him. Mr. Van Ness then invited Ms. Hurley into his room, where she spent several hours. At some point during the early morning hours of Sept. 28, Ms. Hurley and Mr. Van Ness had sexual intercourse. In her complaint against Mr. Van Ness, Ms. Hurley alleged that she was intoxicated, and that the intercourse was nonconsensual. See Statement of Margot Hurley in Record of Proceedings.

Students charged with serious offenses have their cases heard by a disciplinary board for undergraduate matters known as the Dartmouth College Committee on Standards ("COS"). The COS is the body delegated with the authority to promulgate, revise, and enforce rules concerning the disciplinary system, as it applies to undergraduate students. See Dartmouth College Student Handbook at 70 (hereinafter "Handbook"). The COS is comprised of a combination of elected faculty members and elected members of the four undergraduate classes. Id. The Dean of the College sits as a non-voting Chair in all cases heard by the COS, except under certain circumstances not relevant here. Id. The Handbook sets forth the guidelines for COS hearings, which are described as being "administrative in nature and are not governed by the rights and rules that apply in a court of law." Id. at 75. The Handbook provides that the procedure for conducting COS hearings is informal, and "[t]he purpose is to provide the student with an opportunity to be heard

---

[1] The exact amount of alcohol Ms. Hurley consumed that evening was a contested issue at the hearing, and conflicting testimony was offered by various witnesses on this issue.

und to provide the COS relevant information on which to base a decision." Id. at 78. Finally, the
Handbook sets forth the applicable standard of review governing COS proceedings:

> In order for the COS to conclude that a student has violated a College rule, the COS
> must be persuaded that a preponderance of the evidence supports such a finding. To
> find a violation . . . the COS must conclude that it is more likely than not that the
> student committed the alleged violation.

Id.

Mr. Van Ness' case was referred to the COS, which conducted a hearing on Thursday,
November 11, 2004. During the hearing, the COS heard opening and closing statements from Mr.
Van Ness and Ms. Hurley, and live testimony from various witnesses. The COS also considered an
extensive documentary record. The next day, the COS met to deliberate on Mr. Van Ness' case.
Following deliberation, the COS unanimously voted to find Mr. Van Ness responsible for violating
Standard III of the Code of Conduct. As a consequence, Mr. Van Ness was suspended for six
academic quarters, making him eligible to apply for readmission in March of 2006. Mr. Van Ness
subsequently requested reconsideration of the COS decision, as permitted by the College's
disciplinary rules. In his request, Mr. Van Ness alleged that several procedural errors were
committed by the COS during his hearing. Mr. Van Ness claimed, among other things, that his
right to call witnesses was denied; his right to testify on his own behalf was denied; his right to
question the evidence was denied; and the failure to include the exhibits to his supplemental
statement was prejudicial error. See Andrew Van Ness' Request for Reconsideration in Record of
Proceedings. Mr. Van Ness' request for reconsideration was denied.

Mr. Van Ness thereafter filed suit in this Court against Dartmouth, Dartmouth College Dean
Daniel Nelson (the COS Chair) and Ms. Hurley, alleging claims for: breach of contract against
Dartmouth (Count I); violation of common law due process rights against Dartmouth and Dean
Nelson (Count II); breach of fiduciary duty against Dartmouth and Dean Nelson (Count III);
defamation against Ms. Hurley (Count IV); and intentional infliction of emotional distress against
Ms. Hurley (Count V). See Petition (File index # 1). Subsequently, the parties stipulated to the
dismissal of Dean Nelson as a defendant, which was approved by the Court. (File index # 26). The
parties also stipulated to the dismissal of Ms. Hurley, and Counts IV and V, which was also
approved by the Court. (File index # 35). Dartmouth filed a motion to dismiss Counts II and III.

3

(File index # 29). Thereafter, the parties stipulated to the dismissal of Count II, which was approved by the Court. (File index # 33). By order dated June 23, 2005, this Court granted Dartmouth's motion to dismiss Count III. (File index # 37). Consequently, the only remaining claim against Dartmouth is for breach of contract, as set forth in Count I.

<u>Discussion</u>

In its motion for summary judgment, Dartmouth argues that the undisputed facts demonstrate that it fully complied with its legal obligations to Mr. Van Ness in its administration of his disciplinary proceeding. Specifically, Dartmouth contends that the contractual nature of the relationship between the student and the student's private college requires that this Court uphold disciplinary decisions reached in substantial compliance with the college's rules, and further, that the record establishes that it conducted Mr. Van Ness' disciplinary proceeding in compliance with its rules.

In his motion for partial summary judgment, Mr. Van Ness argues that: first, the COS applied a standard for judging his conduct that differs from the standard for sexual abuse set out in the Handbook; and second, the hearing conducted by the COS violated his rights and, in particular, his right to call witnesses, his right to present evidence, and his right to question the evidence.

Having reviewed the parties' arguments, there are two major issues for this Court to resolve. The first issue is whether the COS applied the correct standard for sexual abuse. The second is whether Mr. Van Ness' disciplinary proceeding was fundamentally fair. The Court addresses each in turn.

*Did the COS Apply the Correct Standard for Sexual Abuse?*

Standard III of the Dartmouth Student Handbook provides as follows:

Students and student organizations are prohibited from engaging in sexual abuse of any kind. Sexual abuse includes, but is not limited to: conduct of a sexual nature which reasonably would be expected to have the effect of threatening or intimidating the persona [sic] at whom such conduct is directed; intentional physical contact with an intimate part of the body of another person without that person's consent; sexual intercourse when such contact is achieved without consent; [sic] through physical force, coercion, or threat, or in situations where the victim is unable to give consent because of physical or mental incapacitation by reason of drug, alcohol consumption, sleep or unconsciousness.

4

See Handbook at 84. Further, the Handbook elaborates on the issue of consent. It states:

> [A]n individual may be unable to give consent because of physical or mental incapacitation by reason of drug or alcohol consumption, sleep or unconsciousness. In adjudicating alleged violations of the sexual abuse standard, the COS will be informed by its judgment as to whether a reasonable person should have known the alleged victim was unable to consent because of those circumstances. . . . One should presume there is no consent in the absence of a clear, positive indication of consent. Verbal communication prior to engaging in sexual activity certainly can help to clarify for the individuals involved whether or not there is consent.

Id. at 145 (internal quotations omitted).

Mr. Van Ness argues that the COS failed to properly interpret or apply the Handbook standard to his conduct. Citing portions of COS Chair Dean Nelson's deposition, he maintains that the COS concluded that: (a) Ms. Hurley gave him a hickey; and (b) it was likely that Ms. Hurley was an active participant in the sexual intercourse. Mr. Van Ness asserts that despite testimony that Ms. Hurley may have given him verbal consent to engage in sexual intercourse, the COS dismissed the significance of her verbal consent, based on her high level of intoxication. Mr. Van Ness argues that the COS wrongly "viewed the consumption of alcohol to be sufficient by itself to make non-consensual conduct that otherwise meets the Handbook criteria for consent." Plaintiff's Motion for Partial Summary Judgment at 36. Mr. Van Ness contends that because different individuals have widely differing abilities to function with alcohol, a finding of incapacity cannot be based solely on the fact that a person has consumed alcohol. Instead, he argues that one must also examine the actions the individual was capable of performing despite her consumption of alcohol.

Dartmouth, on the other hand, argues that the COS correctly applied the College Standard for sexual abuse. Dartmouth points out that the COS considered all of the evidence before it, in all its complexity and with all of its contradictions, assessed credibility, weighed the evidence and reached a unanimous conclusion that Mr. Van Ness was responsible for sexual abuse. Dartmouth also contends that Mr. Van Ness misinterprets the record regarding the COS's treatment of the issue of consent. While Mr. Van Ness asserts that the COS found that Ms. Hurley was not only capable of actively and willingly participating in sexual activity, but in fact

5

did so, Dartmouth argues that the COS made no such findings, and that Dean Nelson's deposition reveals the opposite conclusion. Dartmouth cites the portion of Dean Nelson's deposition wherein he testifies:

> The Committee's conclusion was that she—her ability to consent was so impaired by reason of intoxication, that she did not consent to sexual activity regardless of what else she may have said or done; although, other things she said or did were, indeed, relevant to the Committee in reaching the conclusion that they did.

Deposition of Daniel M. Nelson at 179.

It should be noted that there is no written decision setting forth COS's grounds for finding Mr. Van Ness responsible for sexual abuse. The only glimpse of the COS's deliberative process that the Court is aware of is through Dean Nelson's deposition, to which both parties cite.

The Handbook clearly states that when "adjudicating alleged violations of the sexual abuse standard, the COS will be informed by its judgment as to whether a reasonable person should have known the alleged victim was unable to consent because of these circumstances. . . . One should presume there is no consent in the absence of a clear, positive indication of consent." Handbook at 145. There was contradictory evidence about how much Ms. Hurley had to drink on the night at issue, and also about her ability to walk, talk, and function properly. There was also contradictory evidence as to whether Ms. Hurley gave clear consent on the night in question. The role of the COS was to weigh the contradictory evidence and determine whether a preponderance of the evidence supported a finding that Ms. Hurley was too incapacitated to give knowing consent, and that a reasonable person standing in Mr. Van Ness' shoes would have known that she was unable to consent. The COS had before it evidence that supports its finding, including evidence that Ms. Hurley had several shots of vodka and a beer over the course of the evening, testimony of several witnesses that Ms. Hurley appeared intoxicated on the evening in question, and Ms. Hurley's own testimony that she doesn't remember everything that happened when she was in Mr. Van Ness' room, but that she did not consent to sexual intercourse. See Statement of Margot Hurley *in* Record of Proceedings; see also Transcript of COS Proceedings on Nov. 11, 2004 *in* Record of Proceedings.

Whether this Court would have come to the same conclusion based on the same evidence is irrelevant, and to the extent that either party may be understood as inviting the Court to substitute its own judgment on the merits for that of the COS, the Court declines to do so. The Court finds and rules that the COS did not err in applying the sexual abuse standard during Mr. Van Ness' disciplinary proceeding.

*Was Mr. Van Ness Afforded a Fair Disciplinary Proceeding?*

Although the New Hampshire Supreme Court has not been presented with a case such as this, "[a] majority of courts have characterized the relationship between a private college and its students as contractual in nature. Therefore, students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides." Boehm v. Univ. of Pennsylvania Sch. of Veterinary Medicine, 573 A.2d 575, 579 (Penn. Super. Ct. 1990). Further, "[a] university is not required to adhere to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts. A college must have broad discretion in determining appropriate sanctions for violations of its policies." Schaer v. Brandeis Univ., 735 N.E.2d 373, 381 (Mass. 2000) (internal quotations omitted). This discretion, however, is not unlimited, and many courts have held that college rules and disciplinary proceedings must "comport with basic notions of due process and fundamental fairness." Boehm, 573 A.2d at 580.

This Court agrees, and accordingly rules that the relationship between Dartmouth and Mr. Van Ness is contractual in nature, that Mr. Van Ness is entitled only to those procedural safeguards which the school specifically provides, that Dartmouth is not required to adhere to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts, and that Dartmouth has broad discretion in determining appropriate sanctions for violations of its policies, but that Dartmouth's rules and disciplinary proceedings must comport with basic notions of due process and fundamental fairness.

The Handbook outlines the guidelines for COS hearings, sets forth the procedural rules for such hearings, and also describes students' rights. The Handbook provides:

> Subject to the powers of the [COS] Chair as set forth in the following paragraph, the student is entitled to call witnesses, to present evidence and argument, and to hear and question the evidence against him or her. Neither the student nor the

7

> COS may compel attendance of witnesses or production of evidence. The failure
> of a witness to attend or the unavailability of evidence shall not prevent a hearing
> from going forward or a decision from being rendered. The student is permitted
> to make opening and closing statements. The Chair has discretion over their
> length and relevance.

Handbook at 76, ¶ 5. The Handbook also explains the powers of the COS Chair, and states that

the Chair "is empowered to make all procedural rulings, including rulings on relevance and

admissibility of evidence." Id. at 76, ¶ 6.

Mr. Van Ness argues that his right to call witnesses, to present evidence and argument,

and to question the evidence against him were violated during the COS proceeding. However,

after reviewing the entirety of the record concerning Mr. Van Ness' disciplinary proceeding—

including all documentary evidence submitted to the COS, the transcript of the hearing itself, and

the correspondence between the parties both before and after the hearing—the Court concludes

that the hearing was conducted according to the rules and procedures set forth in the Handbook.

1. Right to Call Witnesses

Mr. Van Ness asserts that he was denied the right to call four witnesses—three students

who submitted written statements on his behalf, and himself. Mr. Van Ness' argument that he

was denied the right to call himself as a witness lacks merit, because during the hearing, he was

questioned *extensively* by the COS members regarding his side of the story, and was allowed to

follow up with commentary after various witnesses testified.

The three students Mr. Van Ness claims should have been permitted to testify were on the

witness list, however, the record contains no written (or verbal) explanation for why these

witnesses did not testify at the hearing. Dartmouth explains that these three witnesses were not

permitted to testify at the hearing because their proffered testimony was either cumulative or

undisputed, and no other basis for their testimony was raised by Mr. Van Ness, either before or

during the hearing.

Having gone through the record, the Court concludes that Dartmouth's position is correct—

there is nothing indicating that Mr. Van Ness objected to the decision not permitting the three

witnesses to testify at the hearing, and furthermore, Mr. Van Ness did not ask that any of the three

witnesses be called to testify for any purpose other than that which he proffered before the hearing.

8

Although Mr. Van Ness now asserts before this Court that the three witnesses should have been permitted to testify for a purpose beyond than that which he offered prior to the hearing, he had ample opportunity to raise this issue during the hearing and did not do so. The Court concludes that Mr. Van Ness' right to call witnesses was not violated.

2. The Right to Introduce Evidence and Argument

Mr. Van Ness alleges that he was not permitted to introduce the collection of extensive email correspondence between himself and Ms. Hurley, and that he was denied the right to testify on his own behalf. As stated above, Mr. Van Ness' testimony at the hearing was extensive and, accordingly, his claim that he was not permitted to testify on his own behalf lacks merit.

The collection of emails Mr. Van Ness sought to introduce were not included in the "evidence" packet provided to COS members, but was available during the hearing and during the deliberation process. Mr. Van Ness argues that the exclusion of these emails from the packet was a breach of Dartmouth's obligations to him, because the emails contradicted Ms. Hurley's statements regarding her relationship with Mr. Van Ness and his actions toward her, and were central to his defense.

In a letter to the members of the COS, Dean Nelson explained that he did not include the collection of emails submitted by Mr. Van Ness in the packet because he deemed them "not sufficiently relevant to the hearing to be included in the packet." Nov. 9th Email from Dean Nelson to COS Committee In Record of Proceedings. Dean Nelson explained to the Committee that one of his goals in chairing Mr. Van Ness' hearing was "to keep everyone's attention focused on the Sept. 27 encounter between [Mr. Van Ness and Ms. Hurley] and not to allow the hearing to become inappropriately focused on the history of their relationship." See id. He stated that a "'limited amount of background information about the relationship is appropriate as context for their understanding whatever happened on Sept. 27, but the question before the committee concerns the Sept. 27 encounter." Id. He added that the emails would be available during the hearing "in the event that some specific relevant question about their content arises." Id.

9

MAR-28-06 TUE 4:54 PM SULLIVAN SUPERIOR COURT P.10

Prior to the hearing, Mr. Van Ness sent an email to Dean Nelson addressing his concern about the emails not being included in the evidence packet. He explained:

> I understand that your office has included the blitz [email] exhibits I submitted in a separate binder that will be available to the committee members, if they request it, but the blitz exhibits were not in the materials being read by the committee prior to the start of the hearing. . . . I am very concerned about their availability, especially as I assume that the members will be reading them tonight at home. The blitz exchanges not only corroborate the information in my statement, but in several instances directly contradict the statements made by Margot Hurley and undermine the credibility of her claim against me. I believe, in fairness, they should have been provided to each committee member. . . . I respectfully request that you ask the Judicial affairs office [sic] to provide each committee member with copies of the tabbed exhibits.

Nov. 10th Email from Andrew Van Ness to Dean Nelson.

The Office of Judicial Affairs responded to Mr. Van Ness' email, explaining that he did a good job explaining the context of the emails in his supplemental statement and that the emails would be available at the hearing should he need to refer to them. See Nov. 11th Email from April Thompson to Andrew Van Ness.

At the hearing, Mr. Van Ness referred generally to the emails he submitted during his opening statement and at other points during the proceeding, but did not refer specifically to any one of them. The history of Mr. Van Ness' relationship with Ms. Hurley and its state of uncertainty was the topic of considerable discussion at the hearing, and although the topic of email correspondence was discussed, Mr. Van Ness never directly quoted from the emails submitted. Consequently, while Mr. Van Ness was provided with both the right and the opportunity to draw more attention to the emails at issue, he did not do so.

Furthermore, the Court has reviewed Mr. Van Ness' supplemental statement to the COS thoroughly, and observes that Mr. Van Ness describes the contents of the emails at great length, in many instances quoting the emails directly. Although the emails were not part of the packets of evidence provided to each of the COS members, his supplemental statement was. Given that: (a) Mr. Van Ness' supplemental statement describes the emails with significant detail; (b) the emails themselves were available to the COS during the hearing and deliberations process and constitute part of the record before the COS; and (c) Mr. Van Ness had the right and opportunity

10

to refer to the emails during the hearing, the COS's decision not to include the emails in the evidence packets sent to COS members did not violate Mr. Van Ness' right to introduce evidence and argument.

    3.  <u>Right to Question the Evidence</u>

    Mr. Van Ness argues that while the Handbook states that students are entitled to question the evidence against them, the COS adopted and enforced a rule that obstructed that right. Essentially, Mr. Van Ness argues that the hearing process was unduly cumbersome because he was never allowed to directly question the witnesses, but had to suggest a question to the Chair, who then would either have a committee member ask the question, modify the question, or simply reject it.

    The Handbook makes abundantly clear that the rules of evidence and courtroom procedure that apply to judicial proceedings do not apply to COS hearings, and that the COS Chair is empowered to make all procedural rulings. Although the process adopted in Mr. Van Ness' disciplinary proceeding differs significantly from the process utilized in formal judicial proceedings, and although somewhat cumbersome, it still permitted Mr. Van Ness to question the evidence against him. A review of the hearing transcript reveals that whenever Mr. Van Ness suggested that a witness be questioned about something, the Chair permitted the question, or some version of the question. There is no evidence that any of Mr. Van Ness' questions were unanswered or rejected.

    After reviewing the Handbook, the hearing transcript, and all of the other documents submitted in the record and with the parties' pleadings, the Court concludes that, even though on the evidence it may well have reached a different conclusion on the merits, Mr. Van Ness was afforded a hearing which complied with the requirements of the Dartmouth Student Handbook and comported with basic notions of due process and fundamental fairness.

    Dartmouth's motion for summary judgment is granted, and Mr. Van Ness' motion for partial summary judgment is denied.

    So ordered.

Dated: March 28, 2006

                                          Steven M. Houran,
                                          Presiding Justice