```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE
```

Mark Anderson,
      Plaintiff

      v.                                  Case No. 19-cv-109-SM
                                          Opinion No. 2020 DNH 149
Trustees of Dartmouth College,
      Defendant

## O R D E R

Mark Anderson, plaintiff, proceeding pro se, asserts a variety of claims arising from Dartmouth College's disciplinary process, which resulted in his expulsion. In the course of discovery, Anderson filed a motion to compel, challenging Dartmouth's withholding of hundreds of documents on grounds of attorney-client privilege, and asking the court to conduct an in camera review of those purportedly privileged documents. The court granted that motion, and defendant subsequently submitted the documents for the court's review.

Having completed that review, the court has determined that, in several instances, defendant's invocation of the attorney-client privilege exceeds its intended purpose. Given the number of documents, nearly 800 individual documents, totaling nearly 5,000 pages, an individualized discussion of every document is neither practical nor necessary. A summary of

1

why defendant's assertions of privilege are problematic with respect to certain categories of documents will do.

**Standard of Review**

"The attorney-client privilege is well-established and its rationale straightforward." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). "By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." Id. (citing Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981)). But, because the privilege "stands as an obstacle of sorts to the search for truth," it is "narrowly construed," protecting only "communications that are [both] confidential" and "made for the purpose of seeking or receiving legal advice." Id. at 22 (citations omitted).

"In harmony with the need for narrow construction," precedent "makes manifest that the attorney-client privilege attaches only:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by

> himself or by the legal adviser, (8) except the protection be waived."

In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011) (quoting Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002)) (further quotations omitted).

"While the privilege may be applied to communications between corporate officers and in-house counsel, it does not apply 'when in-house counsel is engaged in nonlegal work.'" Hebert v. Vantage Travel Serv., Inc., No. CV 17-10922-DJC, 2019 WL 2514729, at *1 (D. Mass. June 18, 2019) (quoting United States v. Windsor Capital Corp., 524 F. Supp. 2d 74, 81 (D. Mass. 2007)).  Because "an in-house lawyer may wear several other hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney-client privilege may be questionable in many instances."  City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 9 (D. Mass. 2000) (citing Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995)).  "The defendant has the burden of establishing that the privilege applies to the documents at issue."  Hebert, 2019 WL 2514729, at *1.

**Discussion**

Dartmouth has grouped the withheld emails into four general categories: (1) emails in which an attorney in the Office of the General Counsel provided legal advice to another Dartmouth employee outside the General Counsel's office ("Group 1"); (2) emails between an attorney in the General Counsel's office and a staff member of that office; (3) emails between two or more employees, on which an attorney in the Office of the General Counsel is copied ("Group 3"); and (4) emails where no attorney is a recipient or author, but the email discusses legal advice given by an attorney in the Office of the General Counsel ("Group 4"). For ease of reference and discussion, the court adopts defendant's groupings.

**Defendant's Failure to Propose Redactions**. As a preliminary matter, defendant has not explained why the majority of the documents withheld could not be produced to the plaintiff with the privileged material redacted. In hundreds of the email threads[1] withheld, most of the emails are external (typically between Anderson and Dartmouth employees). The applicable law is straight-forward: "If the nonprivileged portions of a communication are distinct and severable, and their disclosure

---

[1] An email "thread" is a group of related email messages, or chain, which is comprised of all the succeeding replies and forwards starting with the original email.

4

would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." Paul Rice, Attorney-Client Privilege in the United States § 11:21 (2014). See, e.g., Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 55 (D. Conn. 2005) ("It is not proper to withhold an entire document from discovery on grounds that a portion of it may be privileged. Where a document purportedly contains some privileged information, the unprivileged portions of the document must be produced during discovery. The proper procedure in such instances is to redact the allegedly privileged communication, and produce the redacted document.").

Defendant fails to provide any explanation as to why emails were not produced to plaintiff in redacted form. Defendant has not contended that redactions would be overly burdensome. Nor has defendant argued that non-privileged versions of those emails (the email thread prior to counsel involvement) have already been produced to the plaintiff. Defendant ought to have produced the withheld documents with privileged material redacted, rather than withholding those email threads in their entirety.

**Group 2**.  Moving to discussion of the individual groups identified by Dartmouth, two of the four groups are quickly dispatched.  First, with respect to Group 2, each of the 18 email threads contains at least one privileged email.  In other words, at least one email in each of the Group 2 email threads contains communications made for purposes of rendering legal advice, and otherwise qualifies for protection.  However, as discussed, some of the email threads within Group 2 must be produced redacted.

**Group 4**.  Similarly, in Group 4, the majority of the 43 email threads contain at least one privileged email.  There are two exceptions.  First, the document beginning with Bates stamp "Dartmouth-Priv-000005" is an email exchange largely between Dartmouth employees Kristi Clemens and Keiselim Alfredo Montas, which discuses Anderson's arrest and the charge against him.  As best the court can determine, neither Clemens nor Montas is an attorney, and neither mentions any legal advice they have received from counsel.  The email discusses the relevant New Hampshire statute, but that fact does not render the email subject to an attorney-client privilege. And, while in-house counsel, Kevin O'Leary, is copied on the email, neither Clemens nor Montas requests legal advice, nor does O'Leary offer any.

The document beginning with Bates stamp "Dartmouth-Priv-001888" contains no privileged communications from counsel, or any discussion of legal advice from counsel. Most of the emails in the thread are external, between Anderson and Dartmouth employees. The two internal emails forward those external emails to other Dartmouth employees without comment. Why Dartmouth has taken the position that the email thread is privileged is puzzling – perhaps because O'Leary was one of the several other Dartmouth employees forwarded the external emails. In any event, Dartmouth-Priv-001888 is not privileged.

Those two referenced exceptions aside, the remaining emails in Group 4 contain protected attorney-client privileged communications. Again, several of the email threads must be redacted and produced.

**Groups 1 and 3**.  Group 1, like Group 4, contains mostly privileged emails, or, more accurately, email threads that include at least one privileged email. Group 1, however, does include emails that present an issue arising frequently in the Group 3 emails.

In both Group 1 and Group 3, defendant withheld from production several documents in which nearly every email in the thread is an external one – most often between a Dartmouth

7

employee and the plaintiff – except for the final email, or the final few emails.  Generally, the external communications seem to have been forwarded to several Dartmouth employees, including in-house counsel O'Leary, with a note to the effect of "FYI, see below," or "I sent the following email" to the plaintiff.  Occasionally, the internal emails invite feedback or comment on potential draft email responses to the plaintiff, or request advice on proposed actions to be taken with regard to the plaintiff.  Those requests were not made specifically to counsel, instead generally requested responses from all email recipients.

Despite the fact that those emails do not facially establish that legal advice was sought, Dartmouth takes the position that they are privileged because in-house counsel was expected to "review and respond to emails on which they were copied." Document No. 38, at p. 3.  Dartmouth argues:

> Dartmouth employees copied in-house counsel when they
> believed the communication contained information an
> attorney . . . needed to provide ongoing advice with
> respect to [plaintiff].  In-house counsel was expected
> to review and respond to emails on which they were
> copied in response to changing circumstances involving
> [plaintiff] that might affect advice previously given
> or require new or additional legal input.  This was
> part of a practice established by the Office of
> General Counsel with respect to employees handling
> student conduct matters, so copying a member of the

8

> Office occurred with the reasonable expectation that he or she would provide advice on the topic at hand.

Document No. 38, at p. 3.[2]  Of course, merely saying so does not make the documents privileged: "For the attorney-client privilege, [defendant] must demonstrate that [in-house counsel] was acting as an attorney in relation to each of the documents at issue.  'Merely saying that he was so acting in a memorandum of law is patently insufficient to meet the burden.  Neither can it be assumed.'"  United States v. Windsor Capital Corp., 524 F. Supp. 2d at 81 (quoting Borase v. M/A COM, Inc., 171 F.R.D. 10, 14 (D. Mass. 1997)).

The presence of counsel's name on a communication does not render that communication privileged.  In other words, "the fact that an attorney either is copied on or is one of multiple recipients of an email does not on its own support a claim of attorney-client privilege."[3]  United States ex rel. Barke v.

---

[2] Dartmouth fails to provide any sort of affidavit or declaration from an individual with personal knowledge of that practice, or any other evidence that might establish that practice.

[3] Indeed, some courts have held that a company cannot claim the primary purpose of a communication was to solicit legal advice when that document requests a response from both lawyers and non-lawyers for simultaneous review.  See, e.g., Medina v. Buther, No. 15-CV-1955 (LAP), 2018 WL 4383098, at *3 (S.D.N.Y. Aug. 22, 2018) ("Where . . . 'non-legal' personnel are asked to provide a response to a matter raised in a document, it cannot be said that the 'primary' purpose of the document is to seek legal advice. This is because the response by non-legal

Halliburton, Co., 74 F. Supp. 3d 183, 188-89 (D.D.C. 2014).  The law is clear that a "document must have been intended to be confidential and made for the purpose of giving or obtaining legal advice to be vested with the attorney-client privilege." City of Springfield, 196 F.R.D. at 9.

On that point, City of Springfield, id., is instructive. In that case, defendants "formed an in-house team, in which [in-house counsel] was involved," to handle an investigation.  Id. at 9.  The court noted that the fact that in-house counsel "may have performed certain legal functions as part of that team does not render privileged each communication made by or copied to him, particularly if the communication could equally well have been made to or by an individual without a law degree."  Id. With respect to several of the documents defendants withheld as privileged, the count found, "[t]here is little if anything in

---

personnel by definition cannot be 'legal' and thus the purpose of the request cannot be primarily legal in nature.").  See also In re Vioxx Prod. Liab. Litig., 501 F. Supp. 2d 789, 805 (E.D. La. 2007) ("When, for example, Merck simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.).

these documents that evidences an attorney presenting issues and analyzing claims with an eye toward applicable law." Id. at 10.

With that in mind, the documents beginning with the following Bates stamps in Group 1 are not privileged, and must be disclosed: Dartmouth-Priv-001963; Dartmouth-Priv-001965; Dartmouth-Priv-001967; Dartmouth-Priv-002247; Dartmouth-Priv-002377; Dartmouth-Priv-003508; Dartmouth-Priv-004050; and Dartmouth-Priv-004051.

**Group 3**. The court further orders the documents with the following Bates stamps be produced, as they are not privileged: Dartmouth-Priv-000001; Dartmouth-Priv-000002; Dartmouth-Priv-000008; Dartmouth-Priv-000009; Dartmouth-Priv-000533; Dartmouth-Priv-000536; Dartmouth-Priv-000540; Dartmouth-Priv-000544; Dartmouth-Priv-000548; Dartmouth-Priv-000552; Dartmouth-Priv-000556; Dartmouth-Priv-000561; Dartmouth-Priv-000566; Dartmouth-Priv-000571; Dartmouth-Priv-000576; Dartmouth-Priv-000581; Dartmouth-Priv-000585; Dartmouth-Priv-000591; Dartmouth-Priv-000597; Dartmouth-Priv-000603; Dartmouth-Priv-000609; Dartmouth-Priv-000615; Dartmouth-Priv-000621; Dartmouth-Priv-000628; Dartmouth-Priv-000635; Dartmouth-Priv-000636; Dartmouth-Priv-000637; Dartmouth-Priv-000639; Dartmouth-Priv-000641; Dartmouth-Priv-000643; Dartmouth-Priv-000646; Dartmouth-Priv-000649; Dartmouth-Priv-000653; Dartmouth-Priv-000657; Dartmouth-Priv-

000676; Dartmouth-Priv-001558; Dartmouth-Priv-001560; Dartmouth-Priv-001564; Dartmouth-Priv-001566; Dartmouth-Priv-001568; Dartmouth-Priv-001570; Dartmouth-Priv-001784; Dartmouth-Priv-001802; Dartmouth-Priv-001808; Dartmouth-Priv-001822; Dartmouth-Priv-001832; Dartmouth-Priv-001834; Dartmouth-Priv-001844; Dartmouth-Priv-001852; Dartmouth-Priv-001873; Dartmouth-Priv-001961; Dartmouth-Priv-001983; Dartmouth-Priv-001985; Dartmouth-Priv-002009; Dartmouth-Priv-002011; Dartmouth-Priv-002015; Dartmouth-Priv-002017; Dartmouth-Priv-002055; Dartmouth-Priv-002090; Dartmouth-Priv-002093; Dartmouth-Priv-002096; Dartmouth-Priv-002127; Dartmouth-Priv-002163; Dartmouth-Priv-002168; Dartmouth-Priv-002169; Dartmouth-Priv-002174; Dartmouth-Priv-002176; Dartmouth-Priv-002178; Dartmouth-Priv-002186; Dartmouth-Priv-002187; Dartmouth-Priv-002188; Dartmouth-Priv-002190; Dartmouth-Priv-002381; Dartmouth-Priv-002393; Dartmouth-Priv-002406; Dartmouth-Priv-002409; Dartmouth-Priv-002412; Dartmouth-Priv-002422; Dartmouth-Priv-002424; Dartmouth-Priv-002426; Dartmouth-Priv-002428; Dartmouth-Priv-002431; Dartmouth-Priv-002445; Dartmouth-Priv-002461; Dartmouth-Priv-002462; Dartmouth-Priv-002507; Dartmouth-Priv-002511; Dartmouth-Priv-002516; Dartmouth-Priv-002519; Dartmouth-Priv-002523; Dartmouth-Priv-002527; Dartmouth-Priv-002531; Dartmouth-Priv-002535; Dartmouth-Priv-002539; Dartmouth-Priv-002543; Dartmouth-Priv-002545; Dartmouth-Priv-002548; Dartmouth-Priv-002563; Dartmouth-Priv-

002667; Dartmouth-Priv-002669; Dartmouth-Priv-002670; Dartmouth-Priv-002706; Dartmouth-Priv-002710; Dartmouth-Priv-002714; Dartmouth-Priv-003513; Dartmouth-Priv-003634; Dartmouth-Priv-003635; Dartmouth-Priv-003636; Dartmouth-Priv-003639; Dartmouth-Priv-003641; Dartmouth-Priv-003646; Dartmouth Priv-004054; Dartmouth- Priv-004312.

## Conclusion

For the foregoing reasons, defendant is ordered to disclose to plaintiff the documents depicted by Bates stamps listed herein in their entirety.  Defendant is further ordered to review the documents not specifically addressed in this order, and, where appropriate, to provide plaintiff with redacted versions of those documents (i.e., all reasonably segregable responsive, non-privileged portions of the documents), as well as a revised privilege log describing the communications withheld.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 25, 2020

cc:  counsel of record